**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                      **v.**                  **10-CR-00025A(Sr)**

**ERIC J. HUMPHREY, et al.,**

        **Defendants.**
_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the Hon. Hugh B. Scott by the Hon. Richard J.

Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and

report upon dispositive motions. Dkt. #2. Thereafter, Magistrate Judge Scott issued an

Order of Recusal in the case as to all defendants (Dkt. #131) and Judge Arcara referred

the case to the undersigned, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial

matters and to hear and report upon dispositive motions. Dkt. #133.

## PRELIMINARY STATEMENT

The defendants, Eric J. Humphrey, Charles M. Humphrey, Jr., James

Humphrey, Jr., John E. Humphrey and Anthony Taylor are charged in a one-count

indictment with conspiracy to possess with intent to distribute and to distribute 5

kilograms or more of cocaine and to manufacture, possess with intent to distribute, and

to distribute, 50 grams or more of cocaine base in violation of Title 21, United States

Code, Section 846. Dkt. #1. The defendants each also face forfeiture allegations. *Id*.

Defendants Charles M. Humphrey, Jr., John E. Humphrey, Eric J. Humphrey and

Anthony Taylor have filed dispositive and non-dispositive motions.  *See* Dkt. ##50

(Charles Humphrey), 57 (John E. Humphrey), 60 (Eric J. Humphrey), 69 (Charles

Humphrey (supplemental motion), and 113 (Anthony Taylor).  The government filed

responses to the instant motions.  Dkt. ##61, 70.  Oral argument was held before

Magistrate Judge Hugh B. Scott on February 16, 2011 and March 16, 2011.


By his motion, defendant Charles M. Humphrey, Jr. seeks the suppression of the

electronic eavesdrop evidence on the grounds that the affidavits submitted in support of

the electronic eavesdrop warrants failed to establish necessity for electronic

surveillance.  Defendant Charles Humphrey requested a hearing pursuant to *Franks v.*

*Delaware* claiming that there were material, factual omissions and/or

misrepresentations as to the necessity for the eavesdrop warrants.  With respect to

defendant Charles Humphrey's motion to suppress the evidence obtained pursuant to

electronic surveillance (Dkt. #50), Magistrate Judge Scott ordered a hearing pursuant to

*Franks v. Delaware*, 438 U.S. 154 (1978).[1]  Dkt. #73.  The *Franks* hearing with respect

to the alleged material, factual omissions and/or misrepresentations in the affidavits

---

[1] In addition to the hearing concerning the "veracity of some information provided in the warrant applications," Magistrate Judge Scott ordered hearings with respect to defendant John Humphrey's motion to suppress the evidence seized pursuant to a search of 39 Phyllis Avenue.  Dkt. #73.  In addition, Magistrate Judge Scott further ordered a hearing with respect to the defendants' assertion that the recordings (tapes) obtained as a result of the eavesdrop warrants were not properly (timely) sealed.  *Id*. The hearings ordered by Magistrate Judge Scott on March 16, 2011, were held on April 28, 2011, March 7, 2012, May 15, 2012, July 5, 2012 and August 10, 2012.  All of the hearings were presided over by Magistrate Judge Scott.  This Court has reviewed the transcripts of those hearings.  Dkt. ##84, 119, 124, 132 and 136.

submitted in support of the electronic eavesdrop warrants was held on March 7, 2012, May 15, 2012 and July 5, 2012.  Dkt. ##119, 124 and 136.

The defendant called Assistant District Attorney Mary Beth DePasquale, Buffalo Police Department Detective, assigned as a United States Drug Enforcement Administration ("DEA") Task Force Officer Laura Pittorf, and DEA Special Agent Michael Hill as witnesses during the hearing.  Transcripts of these proceedings were filed on May 14, 2012 (Dkt. #119), July 3, 2012 (Dkt. #124) and October 19, 2012 (Dkt. #136).  Thereafter, the parties filed post-hearing memoranda of law.  Dkt. ##144 and 148.  This Report, Recommendation and Order will address defendant Charles M. Humphrey, Jr.'s motion to suppress the electronic eavesdrop evidence.[2]  Dkt. #50.  This Court's Decision and Order addressing defendant Charles M. Humphrey, Jr.'s non-dispositive discovery motions was previously filed on July 1, 2013.  Dkt. #162.

---

[2] Defendant Eric Humphrey, on behalf of himself and all defendants, separately filed a motion seeking suppression of the electronic eavesdrop evidence on the grounds that the tapes were not timely sealed.  Dkt. #60.  This Court's Report, Recommendation and Order with respect to that motion will be separately filed.

**<u>FACTS</u>**[3]

Assistant District Attorney Mary Beth DePasquale testified that she first learned of this investigation in or about early-September 2009 when she met with DEA Special Agents.[4]  Dkt. #119, p.117.  More specifically, ADA DePasquale testified that the DEA had been conducting an investigation for some time and they believed it may be necessary to obtain an eavesdrop warrant and they wanted to ascertain whether the state wanted to become involved in the investigation.  *Id*. at p.119.  For that reason, ADA DePasquale testified that she was contacted by the DEA and attended the aforementioned meeting.  *Id*.  ADA DePasquale recalled that DEA Special Agents Dale Kasprzyk, Michael Hill and Brian Chella attended the meeting, as did Task Force Officer Laura Pittorf.  *Id*.  Following this initial meeting, ADA DePasquale testified that she spoke to her supervisor, as well as the District Attorney, Frank A. Sedita, III, about the investigation.  *Id*. at p.120.  Ultimately, ADA DePasquale was given permission to be involved in the investigation by District Attorney Frank A. Sedita, III.  *Id*. at p.123.

During her initial meeting with the DEA, ADA DePasquale testified that one of the items for consideration was whether there was sufficient information to

---

[3] The facts herein are taken from the testimony and exhibits admitted into evidence during the hearings held on March 7, 2012, May 15, 2012 and July 5, 2012, as well as the pleadings herein.  References to those hearings will be designated as T, followed by the appropriate page number(s) or Government Exhibit followed by the exhibit number.

[4] Handwritten notes disclosed by ADA DePasquale suggest that the first meeting with the DEA may have taken place on October 5, 2009.  Defendant's Exh. 11; *see also*, Dkt. #124, pp.10-11.

support a finding of probable cause for an eavesdrop warrant.  Dkt. #124, pp.15-16.

ADA DePasquale further testified that during this initial meeting she learned that there

was at least one informant who had been cooperating with the DEA.  *Id*. at pp.14-15.  In

addition, ADA DePasquale testified that she was advised that there had been some

controlled purchases of narcotics, consensual recordings and attempts at physical

surveillance conducted as part of the investigation.  *Id*. at pp.16-17.  Task Force Officer

Pittorf was chosen to be the affiant for the first eavesdrop application.  *Id*. at pp.21-22.

AS described by ADA DePasquale, she assisted in the preparation of the eavesdrop

applications and the Pittorf affidavit, including, fact-checking.  *Id*. at pp.17-21 and p.32.


        The first two eavesdrop applications were for cellular telephone numbers

716-602-4307 (target telephone II) (Defendant's Exh. 5) and 716-846-4969 (target

telephone I) (Defendant's Exh. 6) and were supported by the Affidavit of Task Force

Officer Pittorf sworn to on October 26, 2009 (Defendant's Exh. 7).  According to the

applications, cellular telephone 716-602-4307 (target telephone II) was subscribed to by

Deon Sanders and used by Eric Humphrey and cellular telephone 716-846-4969 (target

telephone I) was subscribed Rick James and used by Eric Humphrey.  *See* Defendant's

Exhs. 5, 6 and 7.  Prior to the commencement of the evidentiary hearings, ADA

DePasquale, pursuant to a subpoena *duces tecum*, provided defense counsel with a

copy of the Affidavit of John C. Garcia from a prior investigation, and she later testified

that she used it in connection with assisting Task Force Officer Pittorf with drafting her

affidavit herein.  Dkt. #124, pp.53-54.

Task Force Officer Pittorf testified that this was the first time she was serving as the affiant in seeking an eavesdrop warrant. Dkt. #124, pp.62-63. She further testified that DEA Special Agents Chella and Hill assisted her and served as her "training officers." *Id*. at p.64. In connection with her testimony concerning other investigative measures that were taken in connection with the investigation, Task Force Officer Pittorf testified that there was a confidential source who was a paid informant. Dkt. #124, pp.67-72. However, Task Force Officer Pittorf admitted that her affidavit submitted in support of the eavesdrop warrant applications failed to state that the informant was, in fact, a paid informant. *Id*. at pp.72-73. Task Force Officer Pittorf also testified that in addition to confidential sources, the investigation also utilized consensually recorded conversations, physical surveillance, telephone toll records analysis, real property ownership searches and license plate searches. *Id*. at pp.79-80. Thereafter, Task Force Officer Pittorf testified concerning specific controlled purchases of narcotics made during the investigation and the physical surveillance that was performed. *Id*. at pp.82-104.

Task Force Officer Pittorf's affidavit contained a section entitled "The Need for Interception of Telephonic/Electronic Communications and Exhaustion of Alternative Investigative Techniques." Specifically, in her affidavit submitted in support of the eavesdrop warrant applications, Task Force Officer Pittorf stated,

> [p]hysical surveillance, though valuable in identifying some activities of the subjects, such as meetings, can only lead investigators to speculate as to the purpose of these activities and cannot conclusively establish all elements of the offenses or identify all of the conspirators. It should be

noted that in this investigation, Eric HUMPHREY and his associates conduct much of their criminal activities on the East Side of the City of Buffalo.  This area of the East Side of Buffalo is virtually impossible to surveil adequately and safely by law enforcement without being spotted by lookouts and/or other associates of HUMPHREY.  Additionally, the nature of any cellular telephone is that it is mobile, limiting the effectiveness of physical surveillance.  Based upon my experience in surveilling individuals in the specific area in which the target telephones are utilized, I believe that attempts at routine law enforcement surveillance are highly noticeable to individuals engaged in criminal conduct in that neighborhood.  I further believe that discovery of such surveillance would have a detrimental effect on the investigation, and would endanger the participating investigators and informants.

Defendant's Exh. 7, ¶90.  Task Force Officer Pittorf testified that in paragraph 90 of her affidavit she attempted to inform the judge that there are shortcomings in physical surveillance, leading to a need for electronic surveillance.  Dkt. #136, p.16.  Task Force Officer Pittorf further testified that some of the content of paragraph 90 originated with her and that Special Agents Hill and Chella, among others, assisted her in writing paragraph 90.  *Id*. at pp.16-17.  Thereafter, Task Force Officer Pittorf testified concerning her affidavit signed on November 24, 2009 and submitted in support of a continuation of the eavesdrop warrant for cellular telephone number 716-602-4307 (target telephone II), subscribed to by Deon Sanders and used by Eric Humphrey.  Defendant's Exh. #13.  During her testimony, Task Force Officer Pittorf admitted that paragraph 87 of Defendant's Exh. #13 was identical to paragraph 90 of Defendant's Exh. #7, and included the same language concerning the fact that "the East Side of Buffalo is virtually impossible to surveil . . . ."  In fact, defendant Charles Humphrey argues that the Garcia Affidavit (Defendant's Exh. 10) prepared in connection with a

different investigation contains much of the same "boiler plate" assertions concerning the necessity for the electronic eavesdrop warrants, including that a particular location in Buffalo is "virtually impossible to surveil adequately and safely by law enforcement without being spotted by lookouts and/or other associates of . . ." Defendant's Exh. 10, ¶75.

On cross-examination by government counsel, Task Force Officer Pittorf testified that her affidavit referenced over nine properties around the City of Buffalo and further, that the majority of them were located on the East Side of Buffalo. Dkt. #136, p.32. Also during cross-examination, Task Force Pittorf recited a portion of paragraph 5(c) of Defendant's Exh. #7 wherein she stated, in part, "[t]hrough CS information, the controlled purchase of narcotics and surveillance, HUMPHREY, JR. has been identified as a crack cocaine distributor associated with Eric HUMPHREY and is currently conducting his drug trafficking activities on the East Side of Buffalo, New York." Defendant's Exh. #7, ¶5(c). Notwithstanding the foregoing, Task Force Officer Pittorf admitted that no where in her affidavit did she specify that a particular address was located on the east side of Buffalo. Dkt. #136, pp.44-45. Task Force Officer Pittorf further testified that while there was surveillance undertaken during the course of the investigation, there were difficulties in surveilling Humphrey and his associates. Dkt. #136, p.35. Specifically, Task Force Officer Pittorf described the difficulties as follows, "[i]t was being spotted by people – that we were only able to drive down the streets or in passing and catch certain parts of it. We weren't able to actually see the transactions, the drug transactions taking place." *Id*.

In fact, during cross-examination Task Force Officer Pittorf described an incident that took place on November 3, 2009 when law enforcement discovered that they were purchasing crack cocaine from someone other than the target they thought they were purchasing from. Dkt. #136, p.36. Specifically, Task Force Officer Pittorf stated, "CS information told us we were purchasing from one person when, in fact, we were purchasing from someone else and we were unable to verify that with surveillance up until this buy [November 3, 2009]." *Id*. at pp.36-37. Indeed, Task Force Officer Pittorf described that an Affidavit of DEA Special Agent Michael Hill was presented to Justice Michalski to clarify information in the October 26, 2009 Pittorf Affidavit that was previously submitted in support of the October 27, 2009 eavesdrop applications. In his Affidavit sworn to on November 10, 2009, Special Agent Hill stated,

> 4. ...[d]uring the course of this investigation, agents have identified Eric HUMPHREY as a significant cocaine trafficker operating in Buffalo, NY. Agents have identified two cellular telephones, **(716)846-4969 (target telephone I)** and **(716)602-4307 (target telephone II)**, being utilized by HUMPHREY in furtherance of his drug trafficking activities. On 10-27-2009, New York State Supreme Court Judge [sic] John L. Michalski, J.S.C. signed a New York State Warrant for the 30 day State Authorized interception of wire communications occurring over cellular telephones **(716)846-4969 (target telephone I)** and **(716)602-4307 (target telephone II)** which are being utilized by Eric HUMPHREY. On 10-28-2009, DEA BRO, Group D-57 initiated the interception of wire communications occurring over the above described cellular telephones.
>
> 5. On the date of November 3, 2009, Agents from the DEA utilizing a DEA Confidential Source (CS) conducted a controlled purchase of crack cocaine from a male believed to be Eric HUMPHREY. During the controlled purchase, SA Michael Hill and SA Brian Chella determined that the male that the CS was purchasing crack cocaine from was in fact

not Eric HUMPHREY, even though he had identified himself on the telephone as "Eric". After the controlled purchase, an identity stop was performed and the target was identified as John E. HUMPHREY. According to the CS the CS stated to SA Hill and GS Kasprzyk that on each occasion, he[/]she purchased cocaine from John E. HUMPHREY. The CS stated that John E. HUMPHREY has been identifying himself as "Eric" and that he/she believed that this was Eric HUMPHREY. The CS stated that he/she had originally obtained three telephone numbers for Eric HUMPHREY, including **716-846-4969 (target telephone I)**, 716-602-3433 and **716-602-4307 (target telephone II).**

6. On the date of 10-08-2009, the CS made two (2) recorded telephone calls to **716-602-4307 (target telephone II)** (N3 and N4). The first telephone call was made by the CS to HUMPHREY at 3:43 PM. The second recorded call was placed at 5:05 PM. It has been determined that the first recorded call to **716-602-4307 (target telephone II)** (N3) was a conversation with Eric HUMPHREY. After further analysis, it has been determined that the second call to **716-602-4307 (target telephone II)** was not Eric HUMPHREY, but a male identifying himself as "Eric" who subsequently sets up a cocaine transaction with the CS. DEA believes at this time, that when the CS called 716-602-4307 (target telephone II) back, HUMPHREY handed the telephone to an associate to avoid talking directly with the CS. The CS stated that he/she has been involved with the HUMPHREY family for years on a social and drug related level and that many of the family members sell crack cocaine.

Government Exh. 1. Based upon SA Hill's Affidavit, as well as the October 26, 2009

Affidavit of Pittorf and the October 27, 2009 Applications of Erie County District Attorney

Frank A. Sedita, III, Justice Michalski issued an Order finding that,

probable cause continues to exist to support the Court's decision made on the 27th day of October, 2009, to cause eavesdropping warrants to issue for telephone **(716)846-4969 (target telephone I)** and telephone **(716)602-4307 (target telephone II)**, therefore it is

> ORDERED, that the eavesdropping warrants currently being
> executed for telephone **(716)846-4969 (target telephone I)**
> and telephone **(716)602-4307 (target telephone II)**, by
> members of the DEA and the Buffalo Police Department
> shall continue in their effectiveness, and it is further
>
> ORDERED, that the interception of communications over
> telephone **(716)846-4969 (target telephone I)** and
> telephone **(716)602-4307 (target telephone II)** shall
> continue through the effective date of such warrant, to wit: a
> thirty (30) day period of time having commenced on October
> 28, 2009.

Government Exh. 1. During cross-examination, Detective Pittorf agreed that as soon as

it was discovered that there was a problem with the investigation and the information

that had previously been presented to Justice Michalski, law enforcement immediately

notified Justice Michalski. Dkt. #136, p.8. Thereafter and as excerpted above, Justice

Michalski in a further Order indicated that his original order of probable cause remained

in effect. *Id*. In addition to the two initial eavesdrop applications submitted to Justice

Michalski on October 26, 2009 (and signed on October 27, 2009), and the subsequent

extension of one of the eavesdrop applications relating to cellular telephone number

716-602-4307 on or about November 24, 2009, the investigation also included, a third

eavesdrop application, the corresponding Affidavit of SA Hill and the Order signed by

Justice Russell P. Buscaglia for cellular telephone number 716-316-7503, subscribed to

by Charles Humphrey and used by Charles Humphrey. Dkt. #136, p.40 and

Defendant's Exh. #16.


  In his affidavit submitted in support of the eavesdrop application for 716-

316-7503, SA Hill incorporated by reference Detective Pittorf's affidavit. *See*

Defendant's Exh. #16, ¶10.  In addition, in a section entitled "The Need for Interception

of Telephonic/Electronic Communications and Exhaustion of Alternative Investigative

Techniques," SA Hill stated, in part:

> [p]hysical surveillance, though valuable in identifying some
> activities of the subjects, such as meetings, can only lead
> investigators to speculate as to the purpose of these
> activities and cannot conclusively establish all elements of
> the offenses or identify all of the conspirators.  It should be
> noted that in this investigation, Eric HUMPHREY, Charles
> HUMPHREY and their associates conduct much of their
> criminal activities on the East Side of the City of Buffalo.
> This area of the East Side of Buffalo is virtually impossible to
> surveil adequately and safely by law enforcement without
> being spotted by lookouts and/or other associates of both
> HUMPHREYS.  Additionally, the nature of any cellular
> telephone is that it is mobile, limiting the effectiveness of
> physical surveillance.  Based upon my experience in
> surveilling individuals in the specific area in which the target
> telephones are utilized, I believe that attempts at routine law
> enforcement surveillance are highly noticeable to individuals
> engaged in criminal conduct in that neighborhood.  I further
> believe that discovery of such surveillance would have a
> detrimental effect on the investigation, and would endanger
> the participating investigators and informants.

Defendant's Exh. #16, ¶66; *see also* Dkt. #136, pp.120-121.  SA Hill also testified that

his affidavit detailed certain previously intercepted conversations, as well as physical

surveillance that was conducted.  Dkt. #136, pp.69-124.  On cross-examination, SA Hill

testified that in connection with the affidavit submitted to Justice Buscaglia, Justice

Buscaglia was advised what efforts had been undertaken relative to physical

surveillance, as well as previously intercepted conversations.  Dkt. #136, p.126.

Specifically, with respect to the effectiveness of the physical surveillance, SA Hill

testified that, "you know, when you get into an organization like this, sometimes they

are effective and sometimes they're not.  And in this particular case, several of our

surveillances were not effective even though they were considered complete." *Id*. at

p.128.  In addition, SA Hill testified,

> it's very difficult to surveil somebody when you're constantly
> on the move doing drive-by's or trying to parallel them on
> another street when they're in an alley, you know.  And it did
> make it very difficult for us to observe the targets that we
> wanted to observe at times when there was – when we felt
> there was [sic] transactions going on or, you know, when we
> felt there was activity pertaining to something maybe coming
> in from another area that we could maybe sit on and watch.

*Id.* at pp.128-129.  Lastly, in response to the question whether they actually uncovered

or saw any criminal activity in the surveillances, SA Hill testified, "[n]ot really.  I mean,

much of what we saw was activity that led us to believe that there was an ongoing

conspiracy, but we were never able to fully expose what we wanted to expose, and that

was the Humphrey family and their sources who were out of state." *Id*. at p.129.


　　　　As noted above, based on the Affidavit of Detective Laura Pittorf sworn to

on October 26, 2009, Justice Michalski issued Warrants on October 27, 2009

authorizing the interception of telephonic communications, including voice

communications, text messaging, push-to-talk, photographic transmissions and other

data transmissions involving the cellular telephone with the number 716-846-4969

(target telephone I) used by Eric Humphrey and subscribed to by Rick James and the

cellular telephone with the number 716-602-4307 (target telephone II) used by Eric

Humphrey and subscribed to by Deon Sanders.  The Warrant issued by Justice

Michalski for 716-846-4969 (target telephone I) provided that the warrant shall be

effective October 28, 2009 at 4:00 p.m. for a period of thirty days from the effective date

or "until sufficient evidence to prove the extent of a narcotics distribution enterprise and the identities of all participants therein is gained, whichever occurs first." Similarly, the Warrant issued by Justice Michalski for 716-602-4307 (target telephone II) also provided that the warrant shall be effective October 28, 2009 at 4:00 p.m. for a period of thirty days from the effective date or "until sufficient evidence to prove the extent of a narcotics distribution enterprise and the identities of all participants therein is gained, whichever occurs first." A period of thirty days from the effective date of October 28, 2009 at 4:00 p.m. would have expired on November 26, 2009 at 4:00 p.m.

For reasons unknown to the Court, interception on 716-846-4969 (target telephone I) concluded on November 10, 2009. Dkt. #70, ¶3. As discussed above, pursuant to the November 10, 2009 Affidavit of SA Hill, Justice Michalski issued an Order on November 10, 2009 finding that probable cause continued to exist to support the Court's decision made on October 27, 2009 for the issuance of eavesdropping warrants for 716-846-4969 (target telephone I) and 716-602-4307 (target telephone II). On November 18, 2009, based on the November 17, 2009 Affidavit of SA Hill, Justice Buscaglia authorized interception over telephone number 716-316-7503 (target telephone III) subscribed to and used by Charles Humphrey. Interception pursuant to that warrant commenced on November 19, 2009 (no time was specified in the warrant) and could continue for a period of thirty days. Interception commenced on November 19, 2009 and terminated at the conclusion of thirty days on December 18, 2009. On November 24, 2009, Justice Michalski authorized the extension of the eavesdropping

warrant for 716-602-4307 (target telephone II) effective November 26, 2009. Interception pursuant to that warrant was terminated on December 24, 2009.

A Sealing Order, signed on November 23, 2009 by Justice Michalski, provided that the one DVD audio disk containing those conversations intercepted pursuant to the eavesdropping warrant issued for 716-846-4969 (target telephone I) be sealed. As indicated above, the actual warrant for target telephone I was not scheduled to expire until November 26, 2009, however, interception ended on November 10, 2009. On December 29, 2009, a Sealing Order for the eavesdropping warrant issued for 716-316-7503 (target telephone III) (effective on November 19, 2009 and which expired on December 18, 2009[5]) was signed by Justice Franczyk. Finally, with respect to 716-602-4307 (target telephone II), the Sealing Order signed by Justice Michalski on January 4, 2010 provides that the warrant extension was effective November 24, 2009 (according to the warrant extension signed on November 24, 2009, interception was effective on November 26, 2009) and was terminated on December 24, 2009.

Finally, on November 17, 2010, Justice Michalski signed an Amended Sealing Order concerning 3 DVD audio disks for an eavesdropping device on telephone number 716-602-4307 (target telephone II) which, according to the warrant became effective on October 28, 2009 at 4:00 p.m. and was continued pursuant to a separate

---

[5] The actual Sealing Order states that interception commenced on November 17, 2009 and concluded on December 16, 2009. According to the actual Warrant signed by Justice Buscaglia, the warrant was signed on November 18, 2009 and to be effective on November 19, 2009.

warrant effective November 26, 2009.  Interception pursuant to that warrant was to

conclude on December 24, 2009.[6]


## DISCUSSION AND ANALYSIS

The defendant asserts that,

[g]iven the actual progress of conventional investigative
techniques, the assertion that the target individuals and
locations were 'virtually impossible to surveil' was an
affirmative misrepresentation of fact.  That material
misrepresentation was compounded by the omission from
each affidavit of the fact that each pertinent location
mentioned was situated on the East Side of Buffalo.  An
additional material omission was the fact that the
cooperating source was a paid informant.  Furthermore,
each one of the issuing judges should have been put on
notice as to exactly which portions of the necessity
allegations were boilerplate assertions of fact.

Dkt. #144, p.20.


18 U.S.C. § 2518(1)(c) requires that each application shall
include:

a full and complete statement as to whether or not other
investigative procedures have been tried and failed or why
they reasonably appear to be unlikely to succeed if tried or
to be too dangerous.

The applications for the first two eavesdropping warrants were based

upon a fifty-four (54) typewritten page affidavit of DEA Task Force Officer Laura Pittorf

_____

[6] The Amended Sealing Order issued by Justice Michalski states that
interception on target telephone II commenced on October 27, 2009 and terminated on
December 16, 2009.

wherein she describes in great detail the history of the investigation to date and the use of confidential informants, consensually recorded conversations, controlled purchases, physical surveillance performed, real property ownership searches, license plate searches and analysis of toll records.  Task Force Officer Pittorf testified that through her affidavit, she attempted to inform Justice Michalski that there were shortcomings in physical surveillance.  In her affidavit, Task Force Officer Pittorf made the statement that, "It should be noted that in this investigation, Eric HUMPHREY and his associates conduct much of their criminal activities on the East Side of Buffalo.  This area of the East Side of Buffalo is virtually impossible to surveil adequately and safely by law enforcement without being spotted by lookouts and/or other associates of HUMPHREY."  Defendant's Exh. 7, ¶90.  In addition, Task Force Officer Pittorf testified that while there was surveillance undertaken during the course of the investigation, there were difficulties in surveilling Humphrey and his associates.  Finally, Task Force Officer Pittorf admitted that her affidavit referenced over nine properties around the City of Buffalo, but no where did she specify that a particular address was located on the East Side of Buffalo.  Dkt. #136, pp.44-45.   With respect to the first two applications, Justice Michalski was supplied with the further Affidavit of SA Hill dated November 10, 2009 concerning a mis-identification of one of the Humphreys and issued an Order stating that the Court "finds that probable cause continues to exist to support the Court's decision made on the 27th day of October, 2009, to cause eavesdropping warrants to issue for telephone **(716)846-4969 (target telephone I)** and telephone **(716)602-4307 (target telephone II)** . . ."  Government Exh. 1.

Thereafter, SA Michael Hill submitted a forty-six (46) page affidavit to Justice Buscaglia in support of an application for a third eavesdrop warrant for (716)316-7503 (target telephone III) subscribed to and used by Charles Humphrey.  In his affidavit he incorporated by reference Task Force Officer Pittorf's prior affidavit and described intercepted telephone conversations, controlled purchases and physical surveillance conducted during the investigation.  Justice Buscaglia signed the warrant on November 18, 2009 and the warrant was to be effective on November 19, 2009. SA Hill testified that Justice Buscaglia was advised what efforts had been undertaken relative to physical surveillance, as well as previously intercepted conversations.  Dkt. #136, p.126.

Specifically, with respect to the effectiveness of the physical surveillance, SA Hill testified that, "you know, when you get into an organization like this, sometimes they are effective and sometimes they're not.  And in this particular case, several of our surveillances were not effective even though they were considered complete."  Dkt. #136 at p.128.  In addition, SA Hill testified,

> it's very difficult to surveil somebody when you're constantly on the move doing drive-by's or trying to parallel them on another street when they're in an alley, you know.  And it did make it very difficult for us to observe the targets that we wanted to observe at times when there was – when we felt there was [sic] transactions going on or, you know, when we felt there was activity pertaining to something maybe coming in from another area that we could maybe sit on and watch.

*Id.* at pp.128-129.  Lastly, in response to the question whether they actually uncovered or saw any criminal activity in the surveillances, SA Hill testified, "[n]ot really.  I mean,

much of what we saw was activity that led us to believe that there was an ongoing conspiracy, but we were never able to fully expose what we wanted to expose, and that was the Humphrey family and their sources who were out of state." *Id*. at p.129.

On November 24, 2009, Task Force Officer Pittorf submitted a second, fifty-eight (58) page Affidavit to Justice Michalski seeking an extension of the eavesdropping warrant issued for telephone number (716)602-4307 (target telephone II). In that Affidavit, Task Force Officer Pittorf detailed certain previously intercepted conversations, as well as physical surveillance and controlled purchases that had been conducted. Defendant's Exh. 13.

Basically, the defendant is requesting that a review of Justice Michalski's and Justice Buscaglia's decisions in issuing the warrants be undertaken so as to conclude that such orders were improperly issued. The role of this Court in conducting such a review is no different than that conducted by a court of appeals and therefore, the admonition of the Second Circuit Court of Appeals is appropriately applied in this process wherein the Court stated:

> "In reviewing a ruling on a motion to suppress wiretap evidence, we accord deference to the district court." *Miller*, 116 F.3d at 663 (quoting *Torres*, 901 F.2d at 231). Our role in reviewing the issuance of a wiretap order is not to make a *de novo* determination of the sufficiency of the application, "but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *Id.*

*United States v. Diaz*, 176 F.3d 52, 109 (2d Cir.), *cert. denied* by *Rivera v. United States*, 528 U.S. 875 (1999).

Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied* 498 U.S. 906 (1990), addresses the issues raised by the defendants herein on the issue of whether 18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to sacrifice brevity and set forth that Court's ruling in detail.

Section 2518(1)(c) requires that an application for such an interception shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." Similarly, section 2518(3)(c) requires the judge to whom an application for a wiretap is made to determine, as a condition of authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."

The application for the wiretap in this case was based upon a thirty-six page affidavit by DEA agent Timothy J. Sullivan dated May 27, 1987. Flores contends that when the application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful." In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id*. at 104. Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).

We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap. Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). As we have stated:

> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *see also United States v. Fury*, 554 F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). And, as the *Scibelli* court went on to say:

> [I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner. The legislative history makes clear that section 2518(1)(c) is not designed to force the

Government to have exhausted all "other investigative procedures".

> "The judgment [of the district judge] would involve a consideration of all the facts and circumstances. Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What the provision envisions is that the showing be tested in a practical and commonsense fashion.
>
> S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, p. 2190 (citations omitted).

*Scibelli*, 549 F.2d at 226.

*Id.* at 231-232) (brackets included); *see also United States v. Diaz,* 176 F.3d 52, 111

(2d Cir.), *cert. denied by Rivera v. United States*, 528 U.S. 875 (1999).[7]

---

[7] The Court acknowledges that in support of his motion, defendant Charles Humphrey relies on the 1998 New York State Appellate Division, Fourth Department decision in *People v. Fonville*, 247 A.D.2d 115 (4th Dep't 1998) concerning the use of boilerplate language in an eavesdrop application to a New York State Justice. In that decision, the Court condemned the use of boilerplate or template assertions to establish necessity for electronic surveillance. Notwithstanding the fact that the eavesdrop warrants at issue here were in fact issued by New York State Justices, there is no dispute that in this federal prosecution, this Court must apply Federal law.

Giving proper deference to Justice Michalski's and Justice Buscaglia's review and acceptance of the fifty-four (54) page Affidavit of Task Force Officer Pittorf sworn to on October 26, 2009 and forty-six (46) page Affidavit of Special Agent Hill sworn to November 17, 2009 (as well as the fifty-eight (58) page Affidavit of Task Force Officer Pittorf seeking an extension) in support of the applications for the eavesdropping warrants and their decisions to grant said applications and issue the orders in question, it is concluded that Justices Michalski and Buscaglia "properly found that conventional investigative techniques had been exhausted and that alternatives to wire interception would be unlikely to succeed or would be too dangerous."  Although the hearing testimony revealed that there was some use of boilerplate language, each of the affidavits submitted in support of the subject eavesdrop applications detailed the physical surveillance that had been attempted and taken place, as well as the limitations of physical surveillance as an investigative technique.  Moreover, the language in the affidavits was clear that the suspect activity took place principally on the East Side of Buffalo, even if it was not specifically denoted that a particular address was located on the East Side of Buffalo.  Therefore, it is recommended that defendant's motion to suppress based on this claim be denied.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made

and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:    Buffalo, New York
            July 19, 2013

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**